IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BENJAMON RAY STEWART,           §
       Petitioner,           §
                    §
V.           §      Civil Action No. 4:18-CV-509-O
                    §  (Consolidated with No. 4:19-CV-152-O)
LORIE DAVIS, DIRECTOR,           §
Texas Department of Criminal Justice,           §
Correctional Institutions Division,           §
         Respondent.           §

## OPINION AND ORDER

Before the Court are the consolidated petitions for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by Petitioner, Benjamon Ray Stewart, a state prisoner confined in the

Correctional Institutions Division of the Texas Department of Criminal Justice, against Lorie Davis,

director of that division, Respondent.[1] After considering the pleadings and relief sought by

Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

In 2014 in Tarrant County, Texas, Case Nos. 1336013D, 1336014D, 1336015D, and

1336016D, a jury found Petitioner guilty of three counts of intoxication manslaughter with a vehicle

and answered affirmatively to the "special issue" on a deadly weapon and one count of failure to stop

and render aid in an accident involving injury or death. 01SHR, vol. 2, 701, ECF No. 34-14; 02SHR,

vol. 2, 724, ECF No. 35-17; 03SHR, vol. 2, 704, ECF No. 36-20; 04SHR, vol. 2, 709, ECF No. 37-

---

[1]Citations to Petitioner's original petition in Civil Action No. 4:18-CV-509-O are referred to as "Pet." followed by the relevant page number(s); citations to his consolidated petition in Civil Action No. 4:19-CV-152-O are referred to as "Consol. Pet." followed by the relevant page number(s).

24.[2] The trial court subsequently assessed Petitioner's punishment at 12 years' confinement in Case Nos. 1336013D and 1336014D, 10 years' confinement in Case No. 1336015D to run consecutively with Case Nos. 1336013D and 1336014D, and 5 years' confinement in Case No. 1336016D to run concurrently with Nos. 1336013D and 1336014D. Petitioner's convictions were affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Docket Sheet 2, ECF No. 33-2. Petitioner also challenged his convictions in four postconviction state habeas-corpus applications, which were denied by the Texas Court of Criminal Appeals without written order. Petitioner asserts that he filed four subsequent state habeas-corpus applications pursuant to article 11.073 of the Texas Code of Criminal Procedure (entitled "Procedure Related to Certain Scientific Evidence"), which were dismissed by the Texas Court of Criminal Appeals as subsequent applications.[3] TEX. CODE CRIM. PROC. ANN. arts. 11.07, § 4, 11.073 (West 2015 & Supp. 2017).

The state appellate court set forth the facts of the case as follows:

> On July 23, 2013 from 6:30 p.m. until approximately 10:30 p.m., [Petitioner] played pool and drank three or four beers at a bar in Fort Worth. After leaving the bar, [Petitioner] made purchases at a nearby Walmart store, once at 11:31 p.m. and again at 12:46 a.m. A Walmart employee, who helped [Petitioner] load his items into his truck after his second shopping trip, noticed that [Petitioner] had a "kind of strong" smell of alcohol on his breath. After his items were loaded, [Petitioner] asked the Walmart employee where he could "get some more alcohol."

> Meanwhile, Najib Intidam, his wife Hanane Bakchine, and their eleven-month-old daughter Nour Elhouda Intidam were also shopping at the same Walmart store during the early morning hours of July 24, 2013. When they left Walmart at 2:13 a.m. in their Toyota Camry, Najib was the driver, Hanane was in the front passenger seat, and Nour was in a car seat behind Najib in the backseat. Video footage showed that their car had working headlights, tail lights, and brake lights.

---

[2]"01SHR," "02SHR," "03SHR," and "04SHR" refer to the records of Petitioner's state habeas proceedings in WR-87,836-01, -02, -03, and -04, respectively.

[3]The records of the four subsequent habeas proceedings are not found among the records filed by the parties.

A little after 2:00 a.m., Roy Hammonds Sr. stopped behind [Petitioner]'s truck at a red traffic light located at an intersection to a highway feeder road near the Walmart. When the light turned green, [Petitioner] did not move. Hammonds waited a few seconds and then honked his horn, which caused [Petitioner] to pull through the intersection. As [Petitioner] went to make a left onto the feeder road, he swung wide on his turn, running over a curb and almost hitting a light pole. Hammonds then made the same left turn onto the feeder road but lost sight of [Petitioner]'s truck after [Petitioner] sped off once he got on the highway.

Ten to fifteen seconds later, Hammonds saw [Petitioner]'s truck parked on a grassy embankment next to the far right lane of the highway. In the middle lane of the highway, Hammonds saw what he thought was a large load of trash that had dropped off a garbage truck; however, he soon realized that it was a "demolished" Toyota Camry with no functioning lights. Hammonds described the Camry as "like a sheet of tinfoil you wadded it up and threw it down." He pulled over in front of [Petitioner]'s truck and saw that [Petitioner] was standing next to his truck, inspecting it for damage. Hammonds called 911 and left, not realizing that three people remained in the Camry.

At approximately 2:20 a.m. that morning, Bruce Sloan was traveling on the highway in his truck, towing a twenty-foot trailer. Sloan was driving in the middle lane when he saw what he thought was a dumpster in the road immediately in front of his truck. Unable to stop, Sloan crashed into the object in the middle lane. Sloan's truck stalled, and the Camry was pushed forward toward the inside lane of the highway, rotating so that it faced oncoming traffic. Sloan got out of his truck and called 911.

James Lopez Sr. was driving in the center lane of the highway and saw a car's headlights pointing towards him and other cars on the highway "start to swerve." He immediately pulled over to the far left side of the highway and "ran back to the car to check on the people." Lopez went to the driver's side and found Najib slumped underneath the steering wheel, breathing but unresponsive. Hanane was in the passenger seat sprawled across the console "like a plank, real stiff" and also unresponsive. Lopez saw Nour trapped underneath Hanane in the front passenger seat and believed that Nour was "already dead." Najib was declared dead at the scene; Hanane and Nour died a short time later.

A person at the scene of the crash told a police officer that he had seen [Petitioner] run from his truck up a hill next to the highway into a "thick treeline." The officer asked the fire department to use a thermal camera to help locate [Petitioner]. A firefighter and two police officers used the thermal camera and found [Petitioner] lying on his stomach buried underneath the brush in the treeline. As an officer handcuffed [Petitioner], he noticed a very strong smell of alcohol coming

from [Petitioner] and that [Petitioner] could not balance as he walked down the hill.

The officers put [Petitioner] in the back of a police car and requested that a DWI officer be dispatched to the scene to perform field-sobriety tests. The DWI officer arrived at the accident scene at 3:19 a.m., one hour after the crash. He approached [Petitioner] and "immediately became overwhelmed" by the odor of alcohol on [Petitioner]'s breath. The DWI officer also saw that [Petitioner]'s eyes were glassy and bloodshot and that his speech was slurred. [Petitioner] failed the horizontal-gaze-nystagmus test, the walk-and-turn test, and the one-leg-stand test. The DWI officer obtained a search warrant for a sample of [Petitioner]'s blood, which revealed that [Petitioner] had an alcohol concentration of 0.289 four hours after the crash occurred. Because of the natural dissipation of alcohol, [Petitioner]'s alcohol concentration at the time of the accident four hours earlier likely was higher than 0.289.

Mem. Op. 2-5, ECF No. 33-4.

## II. ISSUES

Petitioner has filed an avalanche of handwritten pleadings in this action, and his grounds for relief are multifarious, often vague and rambling, and largely conclusory. As such, the claims are addressed as thoroughly as practical. They appear to fall within the following general categories:

(1)     perjured/false testimony;
(2)     ineffective assistance of counsel;
(3)     due process violations; and
(4)     actual innocence.

Pet. 6-7, 12-15, ECF No. 6; Consol. Pet. 6-7, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner sufficiently exhausted his state remedies as to the claims raised and that the petition is not successive or time-barred. Resp't's Answer 7, ECF No. 31.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by

the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut this presumption by clear and convincing evidence. *Id.*

Further, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1191-92 (2018). Under those circumstances, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.* In other words, federal habeas-corpus courts confronted with an unexplained state court decision "are to 'look through' the decision to an earlier state court opinion and presume that the earlier one provides the relevant rationale." *Thomas v. Vannoy,* 898 F.3d 561, 568 (5th Cir. 2018) (citing *Wilson,* 138 S. Ct. at 1192).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus

application without written order, it is a denial on the merits. *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under those circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

Petitioner has not brought forth clear and convincing evidence to rebut the state courts' factual findings relevant to the issues raised. Therefore, the Court defers to all relevant state-court findings in the discussion below.

### B. Perjured/False Testimony

A common thread throughout Petitioner's pleadings is that the state's expert accident reconstructionist, Tim Lovett, gave false or perjured testimony regarding the damages to Petitioner's truck and the crippling of the victims' car. According to Petitioner, as explained in his state habeas proceedings (all spelling, punctuation, and/or grammatical errors are in the original)——

> [w]ith over 20 years experience, the state expert accident reconstructionist diligently explained, at length, to the jury that I was guilty . . . because the damage on my pickup–they said–came from hitting, and disabling, a Toyota for a F450 to hit and kill them. This was the states case against me. Then, on the 4th day, while being asked about gas in the Toyota, he casually said he "matched" my damage to a sign I hit. This makes all his prior testimony false or perjured! . . . If my damage did not come from hitting, and disabling, the Toyota, but from hitting a sign–then a hit and run driver had to hit very hard and disable the Toyota for the F450 to come hit and kill them.

01SHR, vol. 1, 15-16, ECF No. 34-1.

Based on counsel's affidavit, *see infra,* the documentary record, and his own recollection of

the trial proceedings, the state habeas judge entered the following factual findings on the issue (any spelling, punctuation, and/or grammatical errors are in the original):

86. Mr. Tim Lovett testified on August 29, 2014, and September 3, 2014.

87. Mr. Lovett did not testify that [Petitioner] was "guilty."

88. Mr. Lovett testified that "at the time of [the collision with [Petitioner]] [the victim's vehicle]'s driven down into the pavement, [and] the vehicle [was] disabled at that point. Toyota Camry has what [the industry calls] an inertial fuel control switch that is mounted on the top of the tank."

89. Mr. Lovett explained that the collision with [Petitioner]'s vehicle disabled the victim's vehicle because "when that vehicle gets slammed in a collision, the fuel pump shuts off, the car will die at that point and then it's going to go to the end of its path with whatever speed it has left. Then what's required to reset that inertial switch on the Toyota requires a cycling of the key cycle before it will reset."

90. Mr. Lovett testified that, after [Petitioner]'s vehicle hit the victim's vehicle, the victim's vehicle had no power steering and no taillights.

91. Mr. Lovett testified that there was no indication that the F-450 that ultimately hit the victim's vehicle would have hit it had [Petitioner] not struck the victim's vehicle first.

92. Mr. Lovett testified that, in his opinion, [Petitioner]'s intoxication was "the cause" of the victim's deaths.

93. Mr. Lovett testified on direct examination that [Petitioner]'s vehicle struck a highway sign.

94. When discussing the damage to [Petitioner]'s vehicle on direct examination, Mr. Lovett testified as follows:

Q:    How about your review of the physical condition of [Petitioner's] pickup? . . .

Q:    Now, State's Exhibit No. 142?

A:    There's a lot here.

Q:    Okay. Can you tell us what this front vision of the Dodge pickup tells you as far as the collisions are involved?

A:    Okay. Again, you've got contact damage here that runs over. This is where that paint transfer is, off of that right front corner. We've got contact damage that runs along here. You can see movement along here on the top edge of this plastic bumper cover. More importantly is, if you'll notice, there is a line that runs from here all the way up to here.

Q:    And by "here," you're saying from the bottom of the pickup truck about in the center?

A:    Right here.

Q:    Straight upwards?

A:    Yes, ma'am.

Q:    And it that, that indention, that V, that line, from the offset collision with the Toyota Camry?

A:    Oh, heavens, no.

Q:    Where is it from?

A:    It's from the sign post holding that orange warning sign that kicks all of the sandbags out.

Q:    How do you tell that that's from the signpost?

A:    Because that's the size of the metal piping that holds the signs up.

Q:    So that V indention is not from the contact he made with the Toyota?

A:    No, ma'am.

Q:    His contact with the Toyota, in your opinion, can you tell us, was it offset or even?

A:    No, it's even. There's no angles between them.

8

Q:     He made direct contact with the rear of that Toyota Camry?

A:     Yes, ma'am.

95.     On cross-examination, Mr. Lovett testified that "[absolutely" it was his belief that "[w]ithout a doubt any impact between the Toyota and the Dodge did not cause the death of anyone?"

96.     On cross-examination, Mr. Lovett testified as follows:

Q:     Okay. Now, I'm going to show you what's been admitted into evidence as State's Exhibit No. 51 . . .

Q:     Yeah. Right down there. All that damage there and the damage to the bumper --

A:     Yes, sir.

Q:     -- was that caused in the collision that you're testifying to that occurred between the Dodge and the Toyota?

A:     No.

Q:     . . . So any damage that shows right there to that bumper, that V shape in the front of the bumper, that was not caused by the collision with the Toyota?

A:     Absolutely not.

Q:     Okay. How about his damage up here to that chrome piece right there, going straight up that grille, was that --

A:     No.

Q:     -- caused --

A:     No.

Q:     Okay. How about the crinkling of the hood?

A:     The crinkling of the hood was -- could have been from the -- part of it from the Toyota. It -- it could have been the way it peaks as it's driven back. The -- if you will look at the very

leading edge of the hood, just to the left of the center core
radiator support, there is a small, I would say, dink in the
hood or basically a small dent in the hood at that point.

Q:     And do you think that was caused by the sign?

A:     I do.

Q:     Okay. So --

A:     It runs all the way from the bottom straight up through the
top.

Q:     What damage on the front of that vehicle, in your expert
opinion, was caused by the collision with the Toyota?

A:     We've got the area of the bumper.

Q:     Where -- if you could hold it up and point out to the jury.

A:     Across -- across the bumper this way. We've also got the
grille that is knocked out at that point. And that's the general
damage profile that I'm looking at from the Toyota.

97.     Mr. Lovett admitted on cross-examination that the sign damage to the front
of [Petitioner]'s vehicle was not notated in his reports.

98.     Mr. Lovett's testimony on direct examination did not contradict his testimony
on cross-examination.

99.     There is no evidence that Mr. Lovett testified falsely.

100.    There is no evidence that Mr. Lovett committed perjury.

01SHR, vol. 2, 398-402, ECF No. 34-9 (citations omitted).

Based on its findings, and applying relevant state law, the state habeas court concluded that

Petitioner failed to prove that the state's expert testified falsely. *Id.* at 410. As noted above, the Court

will defer to all state-court findings in its discussion, including these findings in the remainder of the

discussion.

### C. Ineffective Assistance of Counsel

In grounds one, two, three, four, and thirteen, Petitioner claims that he was deprived of his right to effective assistance of counsel at trial and on appeal. Pet. 6-7, 14, ECF No. 6. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of

counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

In grounds two and three, in part, and ground four, Petitioner claims that his trial counsel was ineffective by failing to adequately prove, as well as object and correct, the perjured/false testimony of Lovett.[4] Pet. 6-7, ECF No. 6. Trial counsel, Michael E. Frederick, responded to Petitioner's claim in an affidavit filed in the state habeas-corpus proceedings, in relevant part, as follows:

## THE FACTS

On July 24, 2013, three people died following collisions in Arlington, Tarrant County, Texas. [Petitioner] was arrested near the collision scene and charged with three offenses under Texas Penal Code § 49.08 and one offense under Texas Transportation Code § 550.021 and § 550.023. Approximately four hours after his arrest, [Petitioner]'s blood alcohol content was found to be 0.289.

[Petitioner] is a college graduate who attended law school and was working as a furniture salesperson. He is intelligent and articulate. [Petitioner] was mentally competent to stand trial and diligently assisted in the defense to the charges.

Unfortunately, [Petitioner] had a history of alcohol abuse and expressed no remorse for the deaths in the collisions. Inflammatory and prejudicial statements made by [Petitioner] while in custody were recorded. [Petitioner]'s recollection of the events as reported to trial counsel were inconsistent with the physical evidence.

## THE TRIAL STRATEGY

After reviewing the evidence and following lengthy discussions with [Petitioner], I did not believe the trial could be won on the intoxication issue. I focused instead on Penal Code § 6.04 and the "concurrent cause" of the second collision being the cause of the three deaths. The facts of the case made any defense under the law quite difficult, and trying to direct the attention of the jury and the Court toward the second collision being "clearly sufficient to produce the result" within the parameters of Penal Code § 6.04 was the focus of the defense.

---

[4]There is some overlap in grounds two and three wherein Petitioner asserts both trial and appellate counsel were ineffective on the supporting facts.

## ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In ground four of [Petitioner]'s Writ of Habeas Corpus, [Petitioner] claims that I failed to object to or correct false or perjured testimony of Tim Lovett, the State's accident reconstruction expert. Tim Lovett testified on direct examination that all of the damage to the front end of [Petitioner]'s truck was caused by the collision with Decedents' car. During the trial in response to my questioning, Tim Lovett went back to the impound lot, re-examined the damage to [Petitioner]'s truck and changed his testimony on the cause of the damage. What did not change was Tim Lovett's opinion that the first collision disrupted the fuel supply to the car and disabled the tail lights leaving Decedents stranded in the roadway. Accident reconstruction is always fact dependent. The second or "concurrent" collision totally destroyed all of the potentially exculpatory physical evidence that could have been gleaned from the car occupied by Decedents. Tim Lovett did not give perjured testimony. Tim Lovett during cross-examination changed his testimony once he realized his initial testimony was incorrect. I pointed this out and emphasized it to the jury. It was clear to all at trial that the impact from the second collision was the actual cause of the three deaths. Unfortunately, the jury rendered a verdict on the "but for" provision of Penal Code § 6.04 rather than the "concurrent cause" provision.

. . .

## SUMMARY

This was a very, very difficult case to defend. Any possible exculpatory evidence was destroyed in the "concurrent" collision. The Penal Code § 6.04 defense was the only hope for a "not guilty" finding from the jury, and I also thought by proving and focusing on the "concurrent" collision conclusively causing the three deaths that it might mitigate the punishment set by the Court. [Petitioner]'s pre-collision and post-collision actions prevented a favorable verdict at either stage of the proceedings. I do not believe [Petitioner] had ineffective assistance of counsel at his trial.

01SHR, vol. 1, 225-27, ECF No. 34-6.

Based on its findings on the perjured/false-testimony issue, the state habeas court concluded

that counsel's decision not to object to Lovett's testimony on the basis that it was perjured or false

was the result of reasonable trial strategy and that Petitioner failed to satisfy either prong of the

*Strickland* standard as to these claims. *Id.* 01SHR, vol. 2, 394, ECF No. 34-9. The state court's

decision is not an unreasonable application of *Strickland.* Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel. *See Strickland,* 460 U.S. at 689. Furthermore, counsel is not required to make frivolous objections. *Johnson v Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002). Petitioner is not entitled to relief under grounds two, three, and four.

In ground thirteen, Petitioner claims that trial counsel was ineffective by failing to use a jury instruction given to him before trial regarding concurrent causation. Pet. 14, ECF No. 6. Under Texas Penal Code § 6.04(a), "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (West 2011). According to Petitioner, counsel should have "used" an instruction stating that "if the additional cause (the F450 truck) other than [Petitioner's] conduct is clearly sufficient 'by itself' to produce the deaths, and [Petitioner's] conduct is clearly insufficient to cause the deaths 'by itself,' the jury cannot convict." 01SHR, vol. 1, 24, ECF No. 34-1.

The state habeas court found that, as a matter of state law, the jury instruction given to the jury properly followed the statutory language and that counsel properly argued that the second collision was sufficient to cause the deaths. 01SHR, vol. 2, 397, ECF No. 34-9. Based on its findings, the state court concluded that Petitioner failed to satisfy either prong of the *Strickland* test as to this claim. *Id.* at 409. Deferring to the state court's application of state law, the court's decision is not an unreasonable application of *Strickland.* Counsel's decision to refrain from requesting a specific jury instruction is a conscious and informed strategic decision, which, like all such decisions, generally does not provide a basis for postconviction relief on the grounds of ineffective

assistance of counsel. *See Strickland,* 460 U.S. at 689; *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983) (providing "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness). Petitioner is not entitled to relief under ground thirteen.

In ground one and grounds two and three, in part, Petitioner claims that his appellate counsel was ineffective by refusing to communicate with Petitioner, raise the perjured/false-testimony issue, and allow Petitioner to use the trial transcripts. Pet. 6-7, ECF No. 6. Appellate counsel responded to Petitioner's claims in an affidavit filed in the state habeas-corpus proceedings, in which he stated the following (all spelling, punctuation, and/or grammatical errors are in the original):

> I was the appellate attorney for [Petitioner]. His trial attorney was Michael Fredrick. [Petitioner] was convicted of multiple offenses involving death. His trial attorney filed a Notice of Appeal which was apparently misplaced by the Clerks office. I filed a Motion for New Trial within six (6) days of the date the Judgement having been signed by the Trial Court. The District Court indicated [Petitioner]'s Appeal was timely perfected. I met with [Petitioner] on several occasions at the jail and at the Court's hold-over cell. [Petitioner] indicated that his Trial Attorney did not do "a good job" and that his theory of the case was not presented to the Jury by his Attorney. [Petitioner] had his own version of a Motion for New Trial that he indicated that he wanted me to pursue. I indicated to [Petitioner] that I would have to look into the case in more detail and read the record and file my brief based on the testimony that was presented at Court. I spoke with [Petitioner]'s father, who is an attorney, and indicated to him of his son's desire regarding his Motion for New Trial. [Petitioner]'s desire was in essence to have the facts changed based on his theory of the case which would be presented by his own Motion for New Trial. I indicated that I believed his Motion for New Trial did not have any merit and that I would base the Appeal on the trial court's record. I read the record in detail and researched all legal issues that applied in [Petitioner]'s case. I indicated to [Petitioner] that I was bound for the four corners of the record and could not create new ideas outside the facts of the case.

> [Petitioner], who is a relatively smart person, believes he is an attorney because he attended law school for one semester before being kicked-out. My office

kept [Petitioner] informed of the Appellate process and provided copies of each and every matter that was filed in his case, to him. [Petitioner] filed several pro se motions, which were not recognized by the Court of Appeals because they were hybrid. The record was reviewed twice to ensure all legal issues were properly addressed before the Court.

When representing a client, my goal is always to achieve the best possible result with his or her direction, which is exactly what I did with [Petitioner]'s case. All course of conduct was strategically designed to benefit my client.

01SHR, vol. 1, 276-77, ECF No. 34-7.

The state habeas court entered findings consistent with counsel's affidavit and concluded that Petitioner failed to prove that counsel's communication constituted deficient representation; that counsel's decision not to raise a frivolous perjured/false testimony issue in a motion for new trial or on appeal was the result of reasonable trial and appellate strategy; and that he was entitled to a copy of the reporter's record. *Id.,* vol. 2, 387, 407, ECF No. 34-9. The state court's decision is not an unreasonable application of *Strickland.* Appointed counsel prosecuting an appeal on an adequate trial record is not constitutionally required to confer with the defendant about legal issues to be presented or to provide a copy of the trial transcripts to a defendant. *See Hooks v. Roberts,* 480 F.2d 1198, 1197-98 (5th Cir. 1973); *Smith v. Beto,* 472 F.2d 164, 165 (5th Cir. 1973). Nor is appellate counsel required to raise patently frivolous arguments on appeal or issues requested by a defendant, or even to present all nonfrivolous points that could have been raised. *See Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir. 1989). Rather, counsel may select and brief those issues that are believed to have the best chance of success. *See Smith v. Robbins,* 528 U.S. 259, 288 (2000); *Jones v. Barnes,* 463 U.S. 745, 751-54 (1983); *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir. 1991). Petitioner is not entitled to relief under grounds one, two, and three.

### D. Due Process Violations

In grounds five, six, seven, eight, ten, eleven, twelve, and fourteen, Petitioner raises a spate of alleged due process violations in which he asserts that he was deprived of due process because——

(1)     the state judges and his attorneys never confirmed what his actual charge was in his accident-causing-bodily-injury-or-death case (ground five);

(2)     the appellate court failed to apply the appropriate law and facts to the erroneous charge of failure to stop and render aid (ground six);

(3)     the state used perjured/false expert testimony to obtain his conviction (ground seven);

(4)     the appellate court denied his request for relief from ineffective appellate counsel and to substitute counsel (grounds eight and twelve);

(5)     the appellate court used the state expert's false testimony in its opinion (ground ten);

(6)     he was denied use of his trial transcripts; and

(7)     the state habeas proceeding was unfair between the state and the individual (ground fourteen).

Pet. 12-13, 15, ECF No. 6. Additionally, in grounds one and three of his consolidated petition, Petitioner claims he was deprived of due process because his state writs under article 11.073 of the Texas Code of Criminal Procedure (entitled "Procedure related to certain scientific evidence") were dismissed as successive article 11.07 writs; he was not represented by counsel and did not have access to his trial transcripts; and the prison confiscated and disposed of his paperwork and legal documents. Consol. Pet. 6-7, ECF No. 1. In ground two of his consolidated petition, Petitioner claims that he was deprived of due process and a fair trial because the state withheld "new scientific evidence of a 'match,' from a sign, to the damage on [his] pickup until [the] end of trial, until after [the] jury was prejudiced with false 'junk science' findings for (3) days." *Id.* at 6.

17

In grounds five and six, Petitioner claims that the state judges and his attorneys never confirmed the crime that he was charged with in his accident-involving-bodily-injury-or-death case. Pet. 12, ECF No. 6. According to Petitioner, his indictment and the judgment of conviction refer to the offense of accident involving serious bodily injury or death, but he was convicted of, and the appellate court affirmed his conviction for, failure to stop and render aid. Pet. 12, ECF No. 6. The state habeas court entered the following factual findings relevant to the issue:

*Actual Charges*

85.    The judgment lists [Petitioner]'s conviction as for an accident involving serious bodily injury or death pursuant to section 550.021(c)(1) of the Texas Transportation Code.

86.    The Second Court of Appeals listed [Petitioner]'s offense as "failure to stop and render aid" pursuant to section 550.021(a), (c) of the Texas Transportation Code.

87.    The title of section 550.021 of the Texas Transportation Code is "Accident Involving Personal Injury or Death."

88.    The Indictment tracks section 550.021 of the Texas Transportation Code.

89.    The Court's Charge tracked the indictment.

90.    [Petitioner] has been consistently charged with, and convicted of, failure to stop and render aid after an accident involving personal injury or death as prescribed by section 550.021 of the Texas Transportation Code.

91.    There is no evidence that [Petitioner] has been charged with, or convicted of, different offenses.

02SHR, vol. 2, 417, ECF No. 35-12 (citations omitted).

Based on its findings, the state court entered the following legal conclusions:

53.    "§ 550.021. Accident Involving Personal Injury or Death
        (a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

(b) An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.

(C) A person commits an offense if the person does not stop or does not comply with the requirements of this section. An offense under this section:

(1) involving an accident resulting in death of or serious bodily injury, as defined by Section 1.07, Penal Code, to a person is a felony of the third degree; and

(2) involving an accident resulting in injury to which Subdivision (1) does not apply is punishable by:

(A) imprisonment in the Texas Department of Criminal Justice for not more than five years or confinement in the county jail for not more than one year;

(B) a fine not to exceed $5,000; or

(C) both the fine and the imprisonment or confinement."

54.     [Petitioner] was properly charged with violating section 550.021 of the Texas Transportation Code.

55.     [Petitioner] was properly convicted of failing to stop and render aid after an accident involving serious bodily injury or death.

56.     [Petitioner] has failed to prove that no one ever confirmed of what he was charged.

*Id.* at 430-31 (citations omitted).

As a matter of federal constitutional due process, a criminal defendant is entitled to notice of the charges against him so that he can prepare a trial defense. *See Ables v. Scott,* 73 F.3d 591, 593–04 (5th Cir.1996) (citing *Cole v. Arkansas,* 333 U.S. 196, 201 (1948)); *McKay v. Collins,* 12 F.3d 66, 69 (5th Cir.1994). Deferring to the state court's application of state law, Petitioner was not convicted of an offense other than that for which he was charged. Petitioner is not entitled to relief under grounds five and six.

In ground seven, Petitioner claims that the state used the perjured/false testimony of Lovett to obtain his conviction. Pet. 12, ECF No. 6. In addition to its findings on the perjured/false-testimony issue, the state habeas court found no evidence that the state committed prosecutorial misconduct or denied Petitioner due process at trial. 01SHR, vol. 2, 402, ECF No. 34-9. Based on its findings, and applying state law and Supreme Court precedent, the court entered the following legal conclusions on the issue:

54.    The State may not obtain a conviction through the use of perjured or false testimony.

55.    Knowingly using perjured or false testimony amounts to prosecutorial misconduct.

56.    Unknowing use of perjury or false evidence is considered a due process violation.

. . .

60.    [Petitioner] has failed to prove that the State committed prosecutorial misconduct.

61.    [Petitioner] has failed to prove that he was denied due process at trial.

*Id.* at 410 (citations omitted).

The state court's decision is not contrary to or an unreasonable application of federal law as determined by the Supreme Court on the issue. It is well settled that absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue, unsupported or unsupportable by anything else contained in the record, to be of probative evidentiary value. *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983). Petitioner is not entitled to relief under ground seven.

In grounds eight and twelve, Petitioner claims that he was deprived of due process because the state courts failed to grant his requests to remove appellate counsel and appoint substitute counsel

based on counsel's failure to file an adequate motion for new trial, file a notice of appeal, and communicate with Petitioner for purposes of preserving error. Pet. 13-14, ECF No. 6. Based on counsel's affidavit and the documentary record, the state habeas court entered the following relevant factual findings on the issue:

103.   Mr. St. John filed a motion for new trial on [Petitioner]'s behalf on December 15, 2014.

104.   This Court advised the Second Court of Appeals that [Petitioner]'s formal, written notice of appeal could not be located.

105.   The Second Court of Appeals found that [Petitioner]'s notice of appeal was sufficient.

. . .

112.   There is no evidence that [Petitioner] was harmed by appellate counsel's communication.

113.   There is no evidence that there was cause for the Second Court of Appeals to remove Mr. St. John from this case.

114.   There is no evidence that [Petitioner]'s direct appeal was affected by the Second Court of Appeals not substituting [Petitioner]'s counsel on appeal.

01SHR, vol. 2, 402-03, ECF No. 34-9 (citations omitted).

Based on its findings, and relying on state law, the state habeas court entered the following relevant legal conclusions:

63.   A defendant has no right to hybrid representation.

64.   [Petitioner] has failed to prove that the Second Court of Appeals erred by not considering his pro se motion for new trial when he was represented by counsel.

65.   [Petitioner] has failed to prove that Mr. St. John's actions rose to the level of ineffective assistance of appellate counsel.

66.     [Petitioner] has failed to prove that the Second Court of Appeals had grounds to remove Mr. St. John as counsel on his case.

*Id.* at 411 (citations omitted).

The state court's decision is not contrary to or an unreasonable application of Supreme Court precedent on the issues. *See McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984) (providing there is no constitutional right to hybrid representation). Further, counsel was not required to consult with Petitioner regarding the issues to be raised on appeal. Nor has Petitioner demonstrated that he was prevented from preserving error as to any meritorious issues upon which he would have prevailed on appeal. Petitioner is not entitled to relief under grounds eight and twelve.

In ground ten, Petitioner claims that his appeal was "not constitutionally adequate" because the state appellate court relied upon the perjured/false testimony of Lovett. Pet. 13, ECF No. 6. Again, because there was no evidence that Lovett's testimony was false or perjured, this claim is without merit. Petitioner is not entitled to relief under ground ten.

In ground eleven, Petitioner claims that he was denied the use of his trial transcripts. Pet. 14, ECF No. 6. A copy of the trial transcripts was prepared and provided to Petitioner through his appointed counsel to use in preparing the appeal. A state is not required to furnish complete transcripts to a defendant so that he may conduct "fishing expeditions to seek out possible errors at trial." *Jackson v. Estelle,* 672 F.2d 505, 506 (5th Cir. 1982) (internal quotations omitted). Petitioner was accorded all of his rights concerning the appellate record. Petitioner is not entitled to relief under ground eleven.

Finally, in ground fourteen and grounds one and three in the consolidated petition, Petitioner complains of various defects and inequities in the state postconviction habeas proceedings, including

the dismissal of his subsequent state habeas applications as successive, his pro se status, his inability to obtain the trial transcripts, and the confiscation of his paperwork and legal documents by prison staff. Pet. 15, ECF No. 6; Consol. Pet. 6-7, ECF No. 1. Generally, alleged defects in state habeas proceedings are not cognizable on federal habeas review. *See Rudd v. Johnson,* 256 F.3d 317, 319-20 (5th Cir. 2001); *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995); *Duff-Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir. 1992). Nor is there a federally-protected right to counsel in state post-conviction proceedings or to free copies of records or transcripts for the purpose of preparing a collateral attack on a conviction. *See Pennsylvania v. Finley,* 481 U.S. 551 (1987); *Colbert v. Beto,* 439 F.2d 1130, 1131 (5th Cir. 1971). His final claim is wholly conclusory and fails to state a claim for federal habeas relief. *See Ross,* 694 F.2d at 1012. Petitioner is not entitled to relief under ground fourteen or grounds one and three of his consolidated petition.

### F. Actual Innocence

In ground nine, Petitioner claims that he is actually innocent because his conviction is void based upon the perjured/false testimony of Lovett. Pet. 13, ECF No. 6. "Actual innocence" is not an independent ground for habeas corpus relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993); *Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000). In fact, the Supreme Court reaffirmed in *McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013), that it has not yet resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. Until that time, such a claim it not cognizable on federal habeas review under Fifth Circuit law. *In re Swearingen,* 556 F.3d 344, 348 (5th Cir. 2009). Petitioner is not entitled to relief under ground nine.

## V. EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing to develop a factual basis for one or more of his claims. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). *See also Blue v. Thaler,* 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster,* the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state courts. Therefore, he is not entitled to an evidentiary hearing.

## VI. CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. All pending motions not previously ruled upon are DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 22th day of July, 2019.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**